In the Matter of the Estate of ELIZABETH S. HADDEN, Deceased.

Surrogate's Court, Kings County, January 23, 1952.

*Alfred J. L'Henreux* for City Bank Farmers Trust Company, as trustee under the will of Elizabeth S. Hadden, deceased, petitioner.

*Dannenberg, Hazen & Lake* for H. Douglas Hadden and another, objectants.

Rubenstein, S. The testatrix bequeathed in trust to her trustees, a son and a trust company, the sum of $100,000, the income of which was payable to the son for life, and the remainder to his daughter and son. The trustees were authorized to receive and hold securities possessed by testatrix at her death and to invest and reinvest in any nonlegal securities which to them seemed to be for the best interest of the trust estate. The trustees accepted as part of the trust the common stock of two corporations, one a utility and the other an industrial, at their appraised values as of the date of death of the testatrix. They were retained until the life beneficiary's death and distributed in kind to and accepted by the remaindermen at their values as of the date of distribution. The values of both stocks dwindled considerably during the period of the trust and a surcharge therefore is sought against the corporate trustee.

One of the grounds assigned for surcharge is that the values of the stocks of the two companies represented more than 40% of the trust's initial assets and the amount of such holdings was a violation of the principle of diversification. The executorial accounting discloses that the common stocks of said companies represented 49.3% of the testatrix' gross estate. Ownership of the said stocks was first acquired by the testatrix in the utility company by conversion of convertible bonds on August

21, 1922, and in the industrial company by subscription on December 20, 1923. Subsequent to such original acquisitions stock dividends were declared by both companies and the holdings of testatrix in the utility company were further increased by purchase of additional shares of stock and the exchange of shares of stock of a merged company. The testatrix died on July 1, 1930, without having sold the stock of either company. Lack of diversification is not of itself negligence and a basis for surcharge, especially where the securities were received from the testatrix' estate (*Central Hanover Bank & Trust Co. v. Clark*, 81 N. Y. S. 2d 883, 888, *et seq.* and cases cited).

The objectants point out that in 1930 and 1931, the utility corporation's current liabilities exceeded current assets, a condition which they characterized as the equivalent of equitable bankruptcy and a factor making the trustee surchargeable for failure to dispose of that stock at least prior to 1934. Those deficits were noted in analyses of the corporation's 1930 and 1931 annual reports and opinions were expressed that the financial standing of the corporation was so strong that the current financial position was not a disturbing factor. Working capital increased in succeeding years.

The trustee adduced testimony that review of the utility company's securities gave primary consideration to the " margin of protection " accorded to each type of security after the payment of the interest or dividends thereon in the order of their priority of participation in corporate profits. The term " margin of protection " was defined as the ratio between the gross revenue and the funds remaining and available after each type of security had been paid and is not the times interest or dividends earned. The testimony further established that a " margin of protection " of a gilt edge security is 8%, a medium classification is 5 to 8%, and below 5% is in the speculative class. The yardstick of suitability of security retention so apparently employed by the trustee is sought to be one of the grounds for surcharge as in 1930 and 1931 the " margin of protection " on the common stock fell below 5%, after making due allowance for adjustment.

The use of the expression " margin of protection " in connection with common stock is that part of the corporate profits which falls into the surplus account. For that type of variable dividend security the " margin of protection " would be increased by the reduction of the dividend and thus increase the amount available for the surplus account. It would appear, therefore, that the said expression may have relevancy to

bonds, preferred stock and such other types of securities bearing interest or entitled to dividends at fixed rates, but not to common stocks, the dividends upon which vary in the discretion of the directors. The proof established, however, that the trustee considered as more important the net rather than the gross earnings and the entire corporate picture and not some phase of it in arriving at its decisions regarding the suitability of retention of securities.

The objectants also urge the presence of other factors in the utility's management, operation and accounting methods, as well as political, legislative and economic circumstances which adversely affected its earning capacity, which should have impelled the trustees to sell. Some of those factors were present during testatrix' life and others arose later, but to attribute negligence to the trustee for not having foreseen them and their duration would be a judgment based upon hindsight (*Costello* v. *Costello,* 209 N. Y. 252, 262).

The proof establishes that the corporate trustee, through its various committees and departments, regularly reviewed statistics and other data concerning the security and financial standing of corporations, and economic and other trends, which might affect their securities and render them unsuitable as investments for their trust portfolios. Based upon such studies, decisions were reached and acted upon with respect to the sale or retention of the corporation's securities. It also appears that the deceased trustee was a man well versed in the investment field, and that he offered no objection to the retention of the stocks. Upon all the evidence the court finds that the trustee was not negligent and at most was guilty of an error of judgment in not selling (*Matter of Clark,* 257 N. Y. 132). The objections are, therefore, dismissed.

Proceed accordingly.